**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DIANA A. A.,

                Claimant,

        v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

                Respondent.

No. 24 C 5277

Magistrate Judge Karyn L. Bass Ehler

**MEMORANDUM OPINION AND ORDER**

Diana A. A.[1] ("Claimant") seeks judicial review of the final decision of the Commissioner of Social Security[2] ("Commissioner"), denying her application for disability insurance benefits. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 8]. After reviewing the record and the parties' briefs, the Court grants Claimant's request for remand in Plaintiff's Brief in Support of her Motion for Summary Judgment [ECF No. 14] ("Motion") and denies the Commissioner's Motion for Summary Judgment [ECF No. 19].

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by her first name and the first initial of her last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

1

## I.      Procedural History

On July 26, 2022, Claimant filed an application for a period of disability and disability insurance benefits. (R.10). Claimant alleged a disability beginning March 1, 2022. (R.10). The application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.10). A telephone hearing was held on January 18, 2024, at which Claimant was represented by an attorney. (R.10). A vocational expert also testified. (R.10.) The ALJ issued a decision on January 26, 2024, finding Claimant not disabled under the Social Security Act and denying benefits. (R.10-22). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R.1-6). Claimant filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II.      The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must determine whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairments or combination of impairments meet or equal any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy.

2

*Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in any substantial gainful activity since March 1, 2022, the alleged onset date. (R.12). At step two, the ALJ found Claimant had the following severe impairments: adjustment disorder with depression and anxiety, and cervical dystonia. (R.12). At step three, the ALJ found that Claimant did not have any impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (R.13-15). With respect to Claimant's mental impairments, the ALJ undertook the paragraph B analysis[3] and determined that Claimant had mild limitations in understanding, remembering or applying information, and in adapting and managing herself, and that Claimant has moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. (R.13-14). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes or scaffolds; occasional crawling; occasional reaching overhead and frequent reaching in all other directions

---

[3] To determine whether a mental impairment meets or equals listing level severity at step three of the sequential analysis, a claimant must prove she meets the severity criteria of either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. To satisfy the paragraph B criteria, a claimant must demonstrate an "[e]xtreme limitation of one, or marked limitation of two" of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.* To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404. 1520a(c)(2).

3

bilaterally; understanding, remembering and carrying out simple, routine instructions; and no interacting with the general public.

(R.15). At step four, the ALJ found that Claimant is unable to perform any past relevant work. (R.20). At step five, the ALJ found there were jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of housekeeping cleaner, hand packager, and parts assembler. (R.21). Based on these findings, the ALJ concluded Claimant was not disabled. (R.22).

## DISCUSSION

### I. Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."

4

*Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." … At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding the ALJ's decision must be affirmed even if "reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## II.    Analysis

Claimant argues the ALJ failed to account for her moderate limitations in the ability to maintain concentration, persistence, or pace ("CPP") in the RFC, essentially arguing that the mental limitations in the RFC are not supported by substantial evidence. Specifically, Claimant says the ALJ did not incorporate any CPP-specific limitations in the RFC despite concluding in the Paragraph B analysis that Claimant had moderate limitations in the CPP functional area and relying on two state agency psychologists' opinions finding Claimant had moderate CPP limitations including in maintaining attention and concentration for extended periods of time.

Motion [ECF No. 14] at 3-6. Claimant also argues the RFC is not supported by substantial evidence because it does not account for limitations stemming from Claimant's pain and headaches. *Id.* at 8-10. As the Court finds these arguments regarding the RFC to be dispositive of the question of remand, the Court declines to address Claimant's other arguments.

**A. Mental limitations in RFC were not supported by substantial evidence.**

The ALJ's "RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00C(3). When an ALJ addresses a claimant's CPP limitations, the "RFC assessment need not recite the precise phrase 'concentration, persistence, or pace'" but "any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019); *see O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

With respect to Claimant's CPP limitations, the ALJ opined during her Paragraph B analysis that:

> . . . claimant has a moderate limitation. In her function report, the claimant alleged problems with concentration and completing tasks. On average, she reported, she can pay attention for 2 to 3 hours (6E/6). During her February 2023 psychological consultative examination, the claimant evidenced no obvious difficulties with impulsivity or distractibility on Adderall (2F). The claimant testified that she has a hard time concentrating, persisting or maintaining pace because of her pain, though she can manage money and pay bills and helps her daughter with homework.

(R.14). The ALJ also noted that state psychologists at the initial and reconsideration level found Claimant was moderately limited in CPP. (R.14 ("The reviewing State agency psychological

6

consultants at the initial and reconsideration levels of administrative review found a moderate limitation in this area of functioning.")).

The ALJ also determined that Claimant had "a moderate limitation" in interacting with others, noting Claimant "stated that because of her pain, she is much more withdrawn and has decreased social interactions" although she "presented as cooperative, with a friendly and outgoing demeanor" during her February 2023 psychological consultative evaluation and "reported that she has several friends and a good social support network." (R.14). As she had with respect to CPP, the ALJ noted the reviewing state psychologists "found a moderate limitation in this area of functioning." (*Id.*)[4]

The ALJ described Claimant's testimony as alleging disability "due primarily to constant pain from cervical dystonia" which, in addition to neck pain and radiating back pain, Claimant also says triggers "headaches that mimic migraine headaches that are debilitating." (R.15). Claimant testified pain medication sometimes helps but not always. (R.16). She explained that "[y]ears ago, she saw a mental health professional for generalized anxiety disorder and ADHD, but she was told that her problems are more physical than mental." (R.16). The ALJ also described Claimant's testimony about how her pain impacts her functional abilities, including that Claimant says she regularly stays in bed waiting for pain to subside during the day when her daughter is at school and that she was unable to complete a four-page function report for this disability application "because of the pain" noting "[s]he started feeling nauseated and could not focus on

---

[4] The ALJ also found Claimant had mild limitations in understanding, remembering, and applying information, and in adapting or managing oneself, and noted the state psychological consultants had similarly found mild limitations in these functional areas. (R.13-14).

it." (R.16.) She explained that because of her pain, "she is much more withdrawn and has decreased social interactions." (*Id.*)

The ALJ summarized records from Claimant's neurologist, Dr. Wynn, who Claimant stated she sees for treatment of both mental and physical symptoms. (*See* R.16-17). According to the ALJ's summary, Dr. Wynn, who had treated Claimant for approximately six years, reported that Claimant has cervical dystonia, stated Claimant was treated with Adderall for ADHD, and that "she has experienced anxiety, in part, related to her near constant pain." (R.17). He expressed concern that Claimant was unable to obtain insurance coverage for Botox treatments which he described as "standard care for patients with cervical dystonia." (R.17). Claimant reported additional pain in her neck to a primary care physician in July 2021 after she stopped receiving Botox injections, and reported additional neck and back pain, as well as pain traveling down her right arm, to Dr. Wynn in September and December 2021. (R.17). In March 2022 Claimant reported to Dr. Wynn that her Adderall dosage was no longer effective and that she had tried taking three tablets and it "made a world of difference." (R.17). She requested refills of her medications in June 2022 when she reported that her nerve pain increased in her neck and down her arms and back. (R17.) Claimant had an internal consultative examination in January 2023 where she reported frequent neck spasms and tightness as well as frequent muscle twitching occurring several times per week, but her physical examination was completely normal. (R.17-18). The ALJ also described Claimant's psychological consultative examination in February 2023, noting Claimant reported Adderall, which she had taken the morning of the examination, was "helpful in ameliorating 'pain, attention, and involuntary twitching,'" that Claimant was "cooperative, with a friendly and outgoing demeanor" during the examination, and "had no obvious difficulties with impulsivity or distractibility." (R.18). She was diagnosed by the consultative examiner with ADHD

in medication remission, along with an adjustment disorder with depression and anxiety. (R.18). In March 2023, Claimant reported to Dr. Wynn a lot of pain in her neck, back, and running down her right arm, reported difficulty lifting her arms, and that her increased neck pain was causing headaches. (R.18). Following a six-month gap in records, the ALJ stated that Claimant reported to Dr. Wynn that she was doing better with her cervical dystonia. (R.18). The handwritten notes from Claimant's September 2023 visit to Dr. Wynn are difficult to read, however it appears the notes state "nerve pain neck still bad." (R.369). She visited the emergency room in December 2023 for jaw pain but her physical examination was normal. (R.18).

The ALJ concluded that "the degree of symptoms and limitations alleged by claimant is inconsistent with the treatment and objective medical findings." (R.18-19). The ALJ acknowledged Claimant "has generally consistent complaints of pain to her medical providers" but stated "physical examinations do not evidence any significant pain behaviors and do not show any significant physical limitations." (R.18).

As to Claimant's mental limitations, the ALJ stated:

> Mentally, the claimant reasonably has some difficulties with concentration, persistence or pace attributable to her pain and occasional anxiety but there is no objective basis for finding that she could not perform the mental demands of simple, routine, unskilled work on a full-time, competitive basis. She is not receiving any formal mental health treatment and her psychological consultative examination showed her to have mostly intact cognitive function with no observed problems with impulsivity or distractibility. To account for the claimant's testimony that she becomes anxious in public, the undersigned has further limited her to work that does not require interaction with the public.

(R.19).

The ALJ also summarized the opinions from the two state psychologists, found "these prior administrative findings as to the Claimant's mental limitations . . . persuasive," and relied on those opinions in crafting the mental restrictions in the RFC. (R.19). The ALJ stated the psychologists' opinions at both the initial and reconsideration level found Claimant "can remember short, simple

9

instructions and perform simple, routine tasks but that she should avoid tasks that require interaction with the public." (R.19). The ALJ explained she found the state psychologists' opinions to be "consistent with the evidence showing that the claimant has largely intact cognitive function and that her ADHD symptoms are generally controlled with medication." (*Id.*) The ALJ also found "[t]heir finding of social limitations to avoid interaction with the public is consistent with the claimant's subjective statements that she becomes anxious in public because of her physical pain and reported dysfunction." (*Id.*)

Claimant argues the mental portion of the RFC is not supported by substantial evidence because it does not include any restrictions to address her moderate limitations in "the ability to maintain attention and concentration for extended periods" that were described in the state psychologists' opinions, which the ALJ found persuasive. Motion [ECF No. 14] at 3-6. Claimant says the ALJ did not support her conclusion that limiting Claimant to "understanding, remembering and carrying out simple, routine instructions," the only relevant mental limitation included in the RFC, adequately accommodated her moderate CPP limitations. Motion [ECF No. 14] at 3-6. Instead, Claimant says this limitation only addressed her mild limitation in understanding, remembering, and applying information, which she says regulations describe as including the ability to learn and use information to perform work activities such as following instructions. *Id.* at 4 (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("(i) Understanding, remembering, or applying information. This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step

activities; and using reason and judgment to make work-related decisions. These examples illustrate the nature of this area of mental functioning.").

The Seventh Circuit has explained "[i]n most cases [] employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from [a vocational examiner's] consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620 (collecting cases); *see also Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (same); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (internal citation omitted) ("[W]e have repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'"). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. The Seventh Circuit has "repeatedly stated that an RFC does not account for CPP limitations when it limits a claimant to certain kinds of work without addressing the claimant's ability to sustain that work." *Keck v. O'Malley*, 2024 WL 3935441, at *2 (7th Cir. Aug. 26, 2024).

The Court finds remand is warranted because substantial evidence does not support the mental restrictions in the RFC, which do not account for Claimant's CPP limitations. The ALJ included only one mental restriction in the RFC that arguably addresses Claimant's CPP limitations: a single phrase limiting Claimant to "understanding, remembering and carrying out simple, routine instructions."[5] The Commissioner essentially acknowledges that at least a portion

---

[5] The only other mental limitation in the RFC was a restriction to "no interacting with the general public," which the Court understands was intended to address the ALJ's finding that Claimant had moderate limitations in interacting with others). (R.15, 19 ("To account for the claimant's testimony that she becomes anxious in public, the undersigned has further limited her to work that does not require interaction with the public.")).

of that phrase, specifically the part about understanding and remembering simple, routine instructions, does not pertain to Claimant's CPP abilities but rather address a different functional area (the ability to understand, remember and apply information). *See* Response [ECF No. 20] at 6-7. This is also consistent with the state psychologists' opinions, which explain that as to "understanding and memory" "Claimant . . . can also understand and remember short simple instructions although the individual has difficulty remembering detailed instructions." (R.87; R.95). Accordingly, the Court agrees with both Claimant and Commissioner that the part of the RFC limitation restricting Claimant to understanding and remembering simple, routine instructions addresses Claimant's limitations in understanding, remembering, or applying information, and not the distinct functional area of CPP.

That leaves the only remaining language in the RFC that addresses mental limitations – the additional restriction to "carrying out simple, routine instructions." The Commissioner focuses on the addition of "carrying out" in this phrase and argues this should reasonably be understood as expanding the RFC limitation to address Claimant's moderate CPP limitations. The Commissioner says the use of the phrase "carrying out" means this limitation "goes to the ability to perform those instructions or tasks rather than just understanding or remembering them" and therefore the RFC was "wholly consistent with the state-agency psychologists' statements that plaintiff was 'capable of performing simple tasks.'" Response [ECF No. 20] at 7-8.

As an initial matter, while the Commissioner suggests the "carrying out" language should be read as describing Claimant's limitations in her ability to perform "tasks," the RFC itself speaks only in terms of Claimant's limitations in carrying out "instructions." In the Court's view, there is, or at the very least could be, a distinction between a person's ability to carry out an instruction and

a person's ability to perform or sustain a task as instructed on a consistent basis throughout the workday.

In addition, the Court disagrees with the Commissioner's characterization of the psychologists' opinions and declines the Commissioner's invitation to speculate about how the ALJ may have interpreted those opinions. The Commissioner argues "[t]he context shows that the ALJ reasonably read the psychologists' opinions as suggesting that plaintiff could both (1) understand and remember and (2) perform and sustain simple work but would have difficulty performing or sustaining more complex or detailed work." Response [ECF No. 20] at 5-6. The Court will not speculate about how the ALJ "reasonably read" the psychologists' opinions or guess at what suggestion the ALJ may have received from those opinions. The Commissioner's argument is also unreasonable because it would require the Court to read a critical missing term – "sustain" – into both the psychologists' opinions as well as the ALJ's opinion and the RFC. But neither the psychologists' opinions nor the ALJ directly state Claimant is able to sustain the performance of simple, routine tasks throughout the workday.

Moreover, the Court need not speculate about how the ALJ "read" the psychologists' opinions because the ALJ directly addressed those opinions. When reaching her Paragraph B conclusion that Claimant had moderate limitations in CPP, the ALJ noted the psychologists' checklist finding of a moderate limitation in CPP. (R.14). The ALJ later stated she found persuasive both psychologists' opinions that Claimant "can remember short, simple instructions and perform simple, routine tasks but that she should avoid tasks that require interaction with the public." (R.19). While this indicates the ALJ understood the psychologists' opinions supported Claimant's ability to "perform" simple tasks, the ALJ did not explain that she also understood those opinions to mean Claimant could "sustain" her performance of such simple tasks throughout

13

the workday, as the Commissioner suggests. And, as discussed above, the RFC assessed by the ALJ (and which the ALJ asked the vocational expert about during the hearing) did not speak in terms of Claimant's ability to perform "tasks" or to "sustain" that performance – but rather only addressed her ability to carry out "instructions."[6]

### B. RFC did not accommodate Claimant's CPP limitations.

Even if the Court accepted the Commissioner's argument that the RFC limitation to "carrying out simple, routine instructions" is synonymous with the psychologists' opinions that Claimant was limited to performing simple, routine tasks, that still does not resolve whether this restriction adequately addressed Claimant's moderate limitation in CPP. Response [ECF No. 20] at 7 (arguing "carrying out simple, routine instructions" should be read as "wholly consistent" with the state psychologists' opinions that Claimant was "capable of performing simple tasks"). Indeed, courts have remanded where the ALJ did not explain how similar RFC language accommodated moderate CPP limitations. *See Jenell C. v. O'Malley*, 2024 WL 4449939, at *6–7 (N.D. Ill. Oct. 9, 2024) (remanding where RFC limited claimant "to performing work involving understanding, remembering and carrying out simple routine instructions, and using judgment limited to simple

---

[6] The ALJ asked the vocational expert about a hypothetical that mirrors the RFC with respect to mental limitations. (R.65). The vocational expert then clarified during the hearing that the hypothetical restricted the individual to "simple and routine instructions." (R.66). Based on that hypothetical, the vocational expert opined that there were jobs the individual could perform in the national economy. (R.66-67). When asked by Claimant's counsel whether "if a hypothetical individual is moderately limited . . . in their ability to maintain concentration, persistence, or maintain pace because of pain and other symptoms, and that lessened, decreased the pace at which they performed work, would that have any vocational effect upon the ability to perform the occupations you identified?" the vocational expert responded "I don't know . . . to what extent we're talking about decreasing pace." (R.68). That response suggests the vocational expert did not interpret the hypothetical limitations as restricting an individual's ability to perform work at a particular pace.

work-related decisions" because the ALJ did not explain how that limitation accommodated the claimant's moderate limitations in CPP).

The Court acknowledges merely employing terms like simple, routine tasks (which the psychologists used in their opinions, although, as discussed above, the ALJ did not include in the RFC) does not result in an automatic determination that an RFC is not supported by substantial evidence. "An RFC determination that a claimant can perform simple, routine work can accommodate a claimant's moderate limitation in CPP if [] the ALJ has reasonably relied on the opinion of a medical expert who translates CPP findings into an RFC determination . . ." *Maria R. v. Kijakazi*, 2022 WL 16553139, at *4 (N.D. Ill. Oct. 31, 2022) (citing *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) and *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019), among other decisions). If, however, an ALJ relies on a narrative translation by a psychologist consultant of a claimant's CPP limitations to an RFC, "[t]he ALJ must consider whether the consultants' narrative RFC assessment adequately encapsulates and translates the checklist" of CPP limitations found by the psychologist. *Pavlicek*, 994 F.3d at 783 (internal quotations omitted).

Here, the ALJ's assessment of the psychologists' narrative RFC is missing that crucial step. First, although the ALJ found that the psychologists determined Claimant could "remember short, simple instructions and perform simple, routine tasks but that she should avoid tasks that require interaction with the public," as explained above, the ALJ did not incorporate that language into the RFC. Instead, the ALJ used different language – limiting Claimant to "understanding, remembering and carrying out simple, routine instructions." The RFC language is also what the

ALJ used in posing the hypothetical to the vocational expert. The Court will not assume, as Commissioner suggests, that these two distinct phrases mean the same thing.

Second, the ALJ failed to address whether the psychologists' narratives "adequately encapsulate[ ] and translate[ ]" the psychologists' checklist findings that Claimant had moderate limitations in CPP including "[t]he ability to maintain attention and concentration for extended periods." *Pavlicek*, 994 F.3d at 783; (R.87; R.95). To that end, the Court has doubts about whether the psychologists' narratives do, in fact, encapsulate and translate the checklist findings. In the checklist portions of their opinions, both psychologists found Claimant was moderately limited in two distinct CPP functional areas – as to her "ability to maintain attention and concentration for extended periods" as well as her "ability to carry out detailed instructions." (R.87; R.95). But the RFC narratives in the psychologists' opinions focus on Claimant's ability to understand and carry out instructions, without directly addressing her ability to maintain attention and concentration for extended periods. In the "MRFC Additional Explanation" narrative, the psychologists' opinions state as to "understanding and memory" that "Claimant . . . can also understand and remember short simple instructions although the individual has difficulty remembering detailed instructions." (R.87; R.95). With respect to "sustained concentration and persistence" the narrative concludes "Claimant has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." (R.87-88; R.95-96). As to "adaptation," the narrative says "Claimant is capable of performing simple routine tasks." (*Id.*) Finally, in explaining why Claimant was unable to perform past jobs, the narrative states the "MRFC limits this claimant to simple, routine tasks and limits social interactions in the work setting." (*Id.*) In the Court's view, the psychologists' narratives do not separately address Claimant's moderate limitation in maintaining attention and concentration

16

for extended periods, but rather focus on Claimant's moderate limitations in carrying out detailed instructions and in interacting with the public.[7]

The ALJ, in turn, relied on the psychologists' narratives without evaluating whether those narratives addressed the checklist findings of a moderate limitation in maintaining attention and concentration for extended periods. "Worksheet observations" like those prepared by the state psychologists' are "medical evidence which cannot just be ignored" in the RFC assessment. *Cain v. Bisignano*, 148 F.4th 490, 498–99 (7th Cir. 2025) (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)). "While the ALJ is entitled to rely on the narrative explanation, the ALJ 'still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the ... MRFC forms.'" *Id.* (quoting *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019)); *see also Pavilicek*, 994 at 783 (narrative translations must encapsulate or translate all checklist findings). In the Court's view, the ALJ did not do so here.

The Court agrees with Claimant that the ALJ's failure to include restrictions in the RFC to specifically address Claimant's limitations in maintaining attention and concentration for extended periods was not harmless (and the Commissioner does not argue otherwise). Motion [ECF No. 14] at 6. The vocational expert testified that the addition of pace limitations that would restrict worker productivity by more than 15% during the workday would be work preclusive. (R.68). Claimant's moderate limitations in her ability to maintain attention and concentration for extended periods reasonably could implicate her ability to stay on task and complete work at a reasonable pace

---

[7] With respect to "social interaction," the narrative states "Claimant has difficulty in interacting appropriately with the general public and tends to withdraw and self-isolate due to physical issues. Limit work tasks that require interaction with the general public." (R.88; R.96).

during the day.[8]

### C. The Commissioner's remaining arguments do not resolve the deficiencies in the RFC.

The Commissioner's other arguments do not persuade the Court that the mental limitations in the RFC are supported by substantial evidence. The Commissioner says its interpretation of the RFC as reflecting the ALJ's finding that Claimant can "sustain" simple, routine tasks throughout the workday is consistent with the ALJ's reference to Claimant's statement that she can pay attention for 2 to 3 hours. Response [ECF No. 20] at 6. The Court disagrees. The ALJ merely noted, in describing the Paragraph B analysis of Claimant's CPP limitations, that Claimant "[o]n average, . . . reported [] she can pay attention for 2 to 3 hours" and still found Claimant to be moderately limited in CPP. (R.14 (cleaned up)). The ALJ did not state, as the Commissioner suggests, that Claimant could consistently pay attention to work tasks for 2 to 3 hours at a time throughout a typical workday.

The Commissioner also argues the ALJ was not required to account for limitations in persistence and pace because the regulations allow for the possibility that a claimant may have a moderate limitation in only concentration, but not in persistence and pace. Response [ECF No. 20] at 7 n.3. While this may be accurate in the abstract, here, Commissioner does not identify evidence suggesting Claimant did not have any limitations in persistence and pace. Nor did the ALJ expressly limit Claimant's CPP limitations to only the area of concentration. *See Varga*, 794 F.3d

---

[8] The vocational expert explained that it would be work prohibitive for an individual in the identified jobs if the work was performed more than 15% slower than the average worker. (R.68-69 ("If they're slower than the average worker, that, in itself, is not work-prohibitive. But if they are coming in anywhere more than 15% -- especially with product work-prohibitive. That is the max-- that is allowable that I have identified in talking with employers. They understand that some employees work at a little bit more rapid pace versus others. And so that's how I pose that question is, to what extent could somebody be slower. And we parse it down to -- they would be on task – they'd be working, but at a slower pace, producing no less than 15% shortage.")).

at 815–16 ("The Commissioner suggests that the ALJ was referring only to concentration, although this is nowhere expressed in the decision and is not supported by the record . . .").

The Commissioner points to the ALJ's finding that the psychologists' opinions were consistent with evidence that the "claimant had largely intact cognitive function and that her ADHD symptoms were generally controlled with medication." Response [ECF No. 20] at 4. The ALJ stated Claimant's "psychological consultative examination showed her to have mostly intact cognitive function with no observed problems with impulsivity or distractibility" (R.19) and noted Claimant took Adderall before the examination (R.18).

The problem with the Commissioner's argument that the RFC is supported by substantial evidence because Claimant's "ADHD symptoms" are controlled by medication is that it assumes that Claimant's CPP limitations were exclusively caused by ADHD. To the contrary, the ALJ concluded that Claimant's inability to concentrate, persist, or maintain pace was due to her pain from her severe physical impairments. (R.14 ("claimant testified that she has a hard time concentrating, persisting or maintaining pace because of her pain. . ."); R.19 ("claimant reasonably has some difficulties with concentration, persistence or pace attributable to her pain and occasional anxiety . . .")).

Finally, the Commissioner argues that a "moderate" limitation in CPP is defined by regulations to mean a "fair" level of functioning and therefore "does not necessarily indicate any specific, much less onerous limitations." Response [ECF No. 20] at 5. This again misses the point. "The Agency's guidance makes clear that 'moderate' impairments should be considered when an ALJ calculates the claimant's residual ability to work. . . To enable meaningful review, the ALJ must at least describe what the moderate limitations are and how they affect the 'ability to work." *See Moy v. Bisignano*, 142 F.4th 546, 555 (7th Cir. 2025) (regulations "explain that 'the spectrum

of limitation that may constitute 'moderate' limitation ranges from limitations that may be close to 'marked' in severity to limitations that may be close to the 'mild' level'"). The ALJ also did not attempt to justify the RFC by explaining that a "moderate" limitation in CPP means a "fair" level of functioning; therefore, the Court cannot consider this explanation proffered by the Commissioner as a justification for the RFC. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

### D. ALJ did not address the aggregate effect of Claimant's pain and CPP limitations on her functioning.

The Court has another concern with how the ALJ addressed the interplay between Claimant's pain resulting from her physical impairments and the effect the pain had on her mental impairments, including her CPP abilities. "[A]n applicant's disabilities must be considered in the aggregate. Enough said." "*See Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011)); *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("The judge's failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error."). Claimant argues "[t]he ALJ failed to account for limitations resulting from pain" and "fails to address the overarching contention that pain resulting from cervical dystonia would generally prevent Plaintiff from maintaining a full-time work schedule." Motion [ECF No. 14] at 10. Claimant also points to other evidence regarding her inability to focus on and complete tasks due to her pain, such as her testimony that she was unable to complete the function report form for her application due to pain which caused her to be nauseous and unable to focus on the page. Plaintiff's Reply Brief in Support of her Motion for Summary Judgment [ECF No. 21] ("Reply") at 2. The ALJ also acknowledged that testimony in her opinion but did not address it when explaining the basis for the RFC. (R.16). The Commissioner does not directly respond to the arguments that the RFC did not accommodate

20

limitations caused by Claimant's pain. *See* Response [ECF No. 20] at 8 (addressing Claimant's arguments about reaching and headaches).

In addition, Claimant argues the RFC "does not account for limitations resulting from headaches" despite the ALJ's acknowledgement of her testimony that she had debilitating headaches from her cervical dystonia, as well as a treatment note from her neurologist in March 2023 reporting that Claimant's neck pain was causing headaches. *Id.* at 8 (citing R.15, R.18). In response, the Commissioner says Claimant "is correct that the ALJ did not say much about her allegations of migraine headaches" and acknowledged the ALJ "did cite plaintiff's complaints of headaches but did not further discuss them in her decision." Response [ECF No. 20] at 11. The Commissioner says this was harmless because no doctor opined that the headaches resulted in any specific limitation. *Id.* at 11-12. Again, this misses the point. The ALJ acknowledged Claimant "has some difficulties with concentration, persistence or pace attributable to her pain." (R.19).

The Court acknowledges that the ALJ's discussion of the record indicates some skepticism about the extent of Claimant's pain, but the ALJ nonetheless concluded that Claimant's pain moderately limits her CPP abilities. Moreover, while the ALJ discusses evidence that Claimant's ADHD symptoms were treated with Adderall, the ALJ does not explain why treatment of ADHD symptoms would necessarily resolve Claimant's limitations in concentration, persistence, or pace that were due to pain. Nor did the psychologists' opinions state that Claimant's CPP limitations are controlled by medication such as Adderall. In short, substantial evidence does not support the ALJ's discounting of Claimant's CPP limitations due to pain based on her ADHD treatment.[9]

---

[9] The ALJ also did not explain the basis for her conclusory statement that Claimant could "perform the mental demands of simple, routine, unskilled work on a full-time, competitive basis" because "[s]he is not receiving any formal mental health treatment" (R.19), nor did the ALJ reconcile this statement with her acknowledgment that Claimant received mental health treatment from her neurologist. (R.16, R.17).

*****

For all the above reasons, the Court concludes the mental limitations in the RFC are not supported by substantial evidence because the ALJ did not explain how those restrictions accommodated Claimant's moderate limitations in CPP. Because this issue is dispositive and the case is being remanded, the Court need not address Claimant's remaining arguments. On remand, however, the Court encourages the ALJ to evaluate the complete record, including the aggregate effects of Claimant's pain and headaches on her CPP abilities, and build a legally acceptable logical bridge between the evidence in the record and the ultimate conclusions, whatever those conclusions may be. *See*, *e.g.*, *Moy*, 142 F.4th 546 (7th Cir. 2025).

### CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's request for remand in Plaintiff's Brief in Support of Her Motion for Summary Judgment [ECF No. 14] is granted and the Commissioner's Motion for Summary Judgment [ECF No. 19] is denied.

It is so ordered.

_____
Karyn L. Bass Ehler
United States Magistrate Judge

Dated: June 24, 2026

22